# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYES CASTILLO ESCOBEDO, | 1:08-CV-01771 GSA HC |
| Petitioner, | ORDER GRANTING RESPONDENT'S MOTION TO DISMISS AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS [Doc. #11] |
| v. | |
| MICHAEL MARTEL, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| Respondent. | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by plea of no contest on February 16, 2005, to one count of second degree murder in violation of Cal. Penal Code § 187(a). (LD 1:1.[1]) On February 16, 2005, Petitioner was sentenced to serve an indeterminate

---
[1] "LD" refers to the documents lodged by Respondent with his motion to dismiss; citation will be to document and page.

term of 15 years to life in state prison. (LD 1:1.) Petitioner did not appeal the judgment.

Petitioner filed three post-conviction collateral challenges with respect to the judgment in the state courts, all petitions for writ of habeas corpus, as follows:

1. Fresno County Superior Court
   Filed: December 26, 2007[2];
   Denied: February 27, 2008;

2. California Court of Appeals, Fifth Appellate District
   Filed: March 22, 2008;
   Denied: April 24, 2008;

3. California Supreme Court
   Filed: May 8, 2008;
   Denied: November 12, 2008.

(LD 2-7.)

On November 19, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in this Court. On January 29, 2009, Respondent filed a motion to dismiss the petition as being filed outside the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1). Petitioner filed his opposition to Respondent's motion to dismiss on February 12, 2009, and Respondent filed his reply to Petitioner's opposition on March 25, 2009. On April 14, 2009, Petitioner filed a reply to Respondent's reply, which was not authorized in the Court's briefing order.

## DISCUSSION

A. Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874

---

[2] Pursuant to the mailbox rule set forth in Houston v. Lack, the Court deems the several habeas petitions filed on the date Petitioner signed them and presumably handed them to prison authorities for mailing, as opposed to the date of their receipt by the court clerk. Huizar v. Carey, 273 F.3d 1220, 1222, (9th Cir. 2001), citing Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988).

F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See <u>Hillery</u>, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitations period. Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

B. Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).

In this case, the petition was filed on November 19, 2008, and therefore, it is subject to the provisions of the AEDPA. The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases pursuant to § 2244(d)(1)(A), the limitations period begins running on the date that the petitioner's direct review became final. In this case, judgment was rendered on February 16, 2005, and Petitioner did not file an appeal. Pursuant to Rule 30.1 (amended and renumbered 8.308) of the California Rules of Court, Petitioner had sixty (60) days in which to file a notice of appeal. Because Petitioner did not file a notice of appeal, his direct review concluded on April 17, 2005, when the sixty-day period for filing a notice of appeal expired. Thus, Petitioner had one year until April 17, 2006, in which to file his federal petition for writ of habeas corpus. See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir.2001). However, Petitioner delayed filing the instant petition until November 19, 2008, over two years beyond the due date. Absent any applicable tolling, the instant petition is barred by the statute of limitations.

C. Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(1)(D)

In his opposition, Petitioner states he was told by his counsel that he would be returned to court for a new trial within 18 months of the plea. He states he waited a little over 18 months before inquiring with his attorney about his return for a new trial. He argues he could not have learned of the attorney's misrepresentations until after the 18 months had expired. He claims that under § 2244(d)(1)(D), he should be entitled to a later start date of the statute of limitations because he did not and could not have discovered the factual predicate for his claim until approximately May 17, 2007, when he was advised by a fellow inmate.

Title 28 U.S.C. § 2244(d)(1)(D) states that the limitation period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The objective standard in determining when time begins to run under Section 2241(d)(1)(D) is "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Hasan v. Galaza, 254 F.3d 1150 (9th Cir.2001), quoting, Owens v. Boyd, 235 F.3d 356, 359 (7th Cir.2000).

As stated above, Petitioner avers that defense counsel misrepresented that he would be

returned for a new trial within 18 months of entering the plea. The Court finds this claim to be implausible and unsubstantiated. In a letter to Petitioner and by sworn declaration, counsel indicated that there were no promises made that were not put on the record at the time of the plea. (LD 8:1). Counsel summarized the details of the plea as follows:

> [T]he prosecutor would concede the motion for new trial if [Petitioner] would agree to a plea of 'no contest' to one count of second degree murder. [Petitioner's] potential exposure would then be reduced from *life in prison without the possibility of parole* (plus other potential consecutive sentences) to *15 years to life*.

(LD 8:2.)

The plea agreement was presented to the trial court, and the trial court agreed to the disposition provided that Petitioner was willing to enter the plea. (LD 8:2.) Counsel avers he explained the plea agreement to Petitioner. (LD 8:3.) He informed Petitioner that he would be sentenced to a term of 15 years to life if he accepted the deal. (LD 8:3.) Petitioner considered the deal and informed counsel he would accept. (LD 8:3.) Counsel states he "never told [Petitioner] that he would get a new trial." (LD 8:3.) He further states that he could "think of no reason whatsoever that the topic of a new trial would come up in those circumstances." (LD 8:3.) Counsel also avers:

> [Petitioner] entered the plea as is reflected in the transcript. [Counsel] did not prompt [Petitioner's] answers to Judge Oberholzer's questions. When the plea was entered [Petitioner] was standing about twelve feet from Judge Oberholzer and in his plain view; Judge Oberholzer had ample opportunity from his vantage to ensure that [Petitioner] was acting in a free, knowing, and intelligent manner.

(LD 8:3.)

According to the plea transcript, Petitioner's motion for new trial was based on the trial court's "inadvertently providing the jurors with some photographs that hadn't been admitted during the course of their deliberations." (LD 9:2.) The prosecutor stated he was willing to agree that Petitioner was entitled to a new trial. (LD 9:3.) At that time, defense counsel informed the court that the parties had agreed on a proposed settlement: Petitioner would enter a plea of no contest to second degree murder, all other counts would be dismissed, and Petitioner's exposure would be to a sentence of fifteen years to life. (LD 9:3.) Counsel informed the court that he had explained the sentence "very carefully" to Petitioner. (LD 9:3.) The court stated it would accept the disposition provided Petitioner was informed of his rights and agreed to the proposed disposition. (LD 9:4.) The

court then stated the terms of the agreement:

> [Petitioner], your attorney has indicated you're going to withdraw your not guilty plea, enter a plea of guilty to a lesser count of this Information to second-degree murder, which your exposure would be to 15 years to life, in which you must spend 85 percent of that time in custody before you'll even be eligible for parole.

(LD 9:4.)

Upon correction from the prosecutor, the trial court informed Petitioner that he would have to spend 100 percent of his 15 year sentence in custody before becoming eligible for parole. (LD 9:5.) Petitioner stated he understood the agreement. (LD 9:5.) He further informed Petitioner that a no contest plea would have the same effect as a guilty plea. (LD 9:6.) When the court asked if there was anything else, defense counsel responded: "I can't think of it, Your Honor." (LD 9:6.)

The trial court then proceeded to explain the constitutional rights Petitioner would be giving up by entering his plea. Among these was the right to a jury trial to which Petitioner agreed. (LD 9:6.) Petitioner was again informed that he would be subject to a term of 15 years to life of which 15 years must be served in custody before becoming eligible for parole. (LD 9:8.) Petitioner stated he understood. (LD 9:8.) Finally, Petitioner affirmed that no one had made any promises to him other than those the trial court had made at the commencement of the proceeding in order for him to enter his plea. (LD 9:9-10.)

As further pointed out by Respondent, the prison mail logs also belie Petitioner's claims. During the eighteen months Petitioner claims he was waiting to be retried, he communicated with his defense counsel only once, on September 13, 2005. (LD 10:1.) The mail log shows the Public Defender's office responded on October 12, 2005. (LD 10:1.) If indeed Petitioner believed he was to be retried during that time, certainly there should have been more communication between himself and his defense counsel. Moreover, that communication was likely the request by Petitioner for his case file which was referenced in defense counsel's letter of October 16, 2007. (LD 8:1.) In his letter, counsel states Petitioner was provided the entire case file in September of 2005 as Petitioner had requested. (LD 8:1.) The fact that Petitioner was provided the entire case file eleven months before he claims he was to be retried further demonstrates the untruthfulness of his assertions.

Therefore, the Court does not accept Petitioner's claim that he was informed he would be

retried within 18 months of entering his plea. The evidence against his allegation is overwhelming. Accordingly, he is not entitled to a later start date for the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(D).

D.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000).

As stated above, the statute of limitations began to run on April 18, 2005, and expired on April 17, 2006. Petitioner did not file his first state habeas petition until December 26, 2007. At that point, the limitations period had expired over twenty months before. Because the limitations period had already expired, the collateral challenge, as well as the two subsequent petitions, had no tolling consequence. Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not entitled to tolling where the limitations period has already run); see also Webster v. Moore, 199 F.3d 1256 (11th Cir.2000); Rendall v. Carey, 2002 WL 1346354 (N.D.Cal.2002).

E.  Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993). Here, the Court finds no reason to equitably toll the limitations period.

Petitioner has not shown that he has been pursuing his rights diligently or that some extraordinary circumstance barred him from timely filing his petition. During the 18 months after he entered his plea, he only made one inquiry with his defense counsel, and that was for return of his case file. (LD 10:1.) Nothing prevented him from making an effort to prepare for a retrial he claims was to happen within 18 months. Even if Petitioner's allegation that defense counsel misinformed him were credited, he would or should have known the factual predicate of his claim eighteen months after he entered his plea, to wit, August of 2006. Nevertheless, he did not do anything until February 16, 2007, when he sent legal mail to the Kern County Superior Court. (LD 10:3.) He then delayed another nine months until he filed his first state habeas petition on December 26, 2007.

Petitioner also claims he acted diligently after learning of his factual predicate from inmate assistance on May 17, 2007. This also cannot be accepted. He states he made attempts to contact his trial attorney, but received no response. The mail log shows he only sent two articles to defense counsel, one five months after obtaining inmate assistance on October 12, 2007, and another six months thereafter on April 24, 2008. (LD 10:4-5). The first was responded to six days later on October 18, 2007. (LD 10:4.) The second was not responded to, but Respondent asserts this was likely due to the fact that counsel had just submitted a declaration on the issue to the appellate court. Petitioner further claims he sought advice from the Kern County District Attorney's Office, and he attempted to obtain transcripts from the Kern County Superior Court. However, the mail logs show he only contacted the District Attorney's Office once, and that was seven months after obtaining inmate assistance. In addition, he only made one contact with the Kern County Superior Court and that was the filing of his habeas petition, also seven months after obtaining inmate assistance.

Therefore, Petitioner has not shown he acted diligently during the 18 months after his plea or after he allegedly learned of, or could have learned of, the factual predicate of his claims. He has also not demonstrated that an extraordinary circumstance prevented him from timely filing his petition. His claim that defense counsel misinformed him is belied by all the evidence, and even if he were credited with the 18 month period, his petition would continue to be untimely.

F. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

district court's denial of his petition, and an appeal is only allowed in certain circumstances. <u>Miller-El v. Cockrell</u>, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 123 S.Ct. at 1034; <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." <u>Miller-El</u>, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) Respondent's motion to dismiss the petition is GRANTED;

2) The petition for writ of habeas corpus is DISMISSED WITH PREJUDICE for violating the statute of limitations;

3) The Clerk of Court is DIRECTED to enter judgment and terminate the case; and

4) The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated: **May 6, 2009**          **/s/ Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE